IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES A. BUTLER | * | |
|     Plaintiff, | | |
|         v. | * | CIVIL ACTION NO. WMN-07-463 |
| | | |
| CLINICAL DIRECTOR MOUBARAK | * | |
| NURSE WILLIAMS | | |
| HEALTH SER. ADMINISTRATOR | * | |
|   ELAYAN | | |
| In their individual and official capacities | * | |
|     Defendants. | | |
| | *** | |

## MEMORANDUM

I.    *Procedural History*

    This Complaint, dated February 9, 2007, was filed by Plaintiff James Butler, a U.S. Bureau of Prisons ("BOP") inmate, who alleges that during his incarceration at the Federal Correctional Institution in Cumberland ("FCI-Cumberland")[1] and the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield") he was not provided adequate medical care, his condition was misdiagnosed, and he was given the wrong medication. Plaintiff claims his Eighth Amendment rights were violated, and Defendants were negligent. He invokes this Court's civil rights jurisdiction under 28 U.S.C. § 1343,[2] as well as its jurisdiction under 28 U.S.C. § 1367 of the Federal Tort Claims Act ("FTCA").

    Plaintiff alleges that during his confinement at FCI-Cumberland from 1997 to 2005, he filed several sick-call requests complaining of rectal and internal bleeding and was given medication for hemorrhoids. Paper No. 1. He further asserts that he "went on sick call" at FCI-Cumberland to

---

    [1]    In May of 2005, Plaintiff was transferred to the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). *See Butler v. Dewalt*, Civil Action No. WMN-05-1214 (D. Md.).

    [2]    The civil rights claim has been construed as one filed pursuant to 28 U.S.C. § 1331. *See*

complain about blood in his stool and complained to the unit manager and "AWs" that he should have had a single cell in light of his positive Hepatitis C test results. *Id*. He claims he was denied same. *Id*. Plaintiff asserts that staff at FCI-Cumberland took a sample of his stool and found blood. He states that medical records from 2004 will show that he made complaints and filed sick-call encounter forms regarding blood in his stool and pain in the lower part of his rectum and stomach, but was told the problem was simply hemorrhoids.[3] *Id*.

Plaintiff maintains that while at FCI-Edgefield in September of 2005, he was hospitalized after blood work diagnosed him with colitis and proctitis.[4] *Id*. He states he became anemic and had to have blood transfusions. *Id*. Plaintiff asserts that his condition improved in vast part due to his hospitalization, as he was provided the proper medication and diet. Paper No. 1. After his hospital release, however, he claims that his condition reverted back because he was refused the diet received in the hospital. *Id*. Plaintiff states that he had to be hospitalized again in February of 2006, as his digestive problems returned. *Id*. He seeks compensatory damages for Defendants' alleged failure to provide adequate medical care due to the deliberate indifference and for the misdiagnosis of his conditions.

Defendants' original Motion to Dismiss or, in the Alternative, for Summary Judgment was granted in part and denied in part on July 27, 2008. Plaintiff's *Bivens* and FTCA claims against FCI-

---

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] Plaintiff contends that while being transferred to FCI-Edgefield he continued to have rectal bleeding and stomach problems with food. He claims that upon his arrival at FCI-Edgefield in May of 2005, he reported his stomach and rectal problems and was given an appointment in June of 2005. *Id*. Plaintiff alleges that he was losing weight and experiencing stomach pain. He asserts that he went on sick-call six times complaining about his "systems" but received no medical care *Id*.

[4] Colitis is an acute or chronic inflammation of the membrane lining the large intestine (colon). Proctitis is an inflammation of the lining of the rectum. *See* www.mayoclinic.com.

Edgefield Defendants Blocker, Serrano, John and Jane Does, and "AWs" for deliberate indifference and tortious conduct from May of 2005 to August of 2006 were transferred to the United States District Court for the District of South Carolina. All claims against Maryland Defendants DeWalt and FCI-Cumberland Assistant Wardens ("AW") were dismissed. The Statute of limitations defense presented by Defendants Maubarek, Williams and Elayan regarding Plaintiff's *Bivens* and FTCA claims were rejected in the interim by the Court. These remaining Defendants and Plaintiff were directed to file further dispositive motions.

II. *Pending Motions*

After several extensions, on April 17, 2009, Defendants Moubarek, Williams and Elayan filed their second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 43. The filing, treated as a Motion for Summary Judgment, remains unopposed as of the within signature date.[5] The case is ready for consideration and may be determined without oral hearing. *See* Local Rule 105.6. (D. Md. 2008).

III. *Standard of Review*

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

---

[5] On April 20, 2009, Plaintiff was notified of Defendants' filing pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). He has not filed an opposition or any other pleading.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

IV.     *Analysis*

According to the unopposed materials, Plaintiff was housed at FCI-Cumberland from 1997-2005.  When he arrived at FCI-Cumberland he had a history of hypertension and lower back pain with a diagnosis of spondylolysis.  Defendants affirm that from March of 1997 to March of 2003, Plaintiff reported to the FIC-Cumberland Chronic Care Clinic ("CCC") for sick call approximately

4

100 times. They claim, however, that he did not complain of any blood in his stools or other problems related to rectal or internal bleeding. Complaints of rectal bleeding were first raised approximately four times between March 21, 2003 and August 20, 2003. On March 21, 2003, Plaintiff was seen in sick call reporting that he had experienced blood in his stools for the past three months approximately two times a week. He complained that the blood was mixed in the stool and was bright red. Examining healthcare staff noted that Plaintiff has a history of polyps with removal of polyps in 2000. The physician's assistant ("P.A.") further noted that Plaintiff had not experienced any weight loss, night sweats, constipation, or change in bowel habits. Plaintiff claimed that he had occasional straining with hard stools but denied any history of hemorrhoids. He refused a diagnostic rectal examination which could have confirmed rectal bleeding. Plaintiff was given three stool sample cards and instructed to return the samples in two weeks. The P.A. also ordered lab results to determine whether Plaintiff was anemic or had an infection.[6] Administrative notations in the medical file from March 25, 2003, indicate that Plaintiff's lab results were normal.

On April 16, 2003, Plaintiff reported to the CCC for a follow-up regarding his hypertension, Hepatitis C ("HCV") and lower back pain. He did not raise any complaints regarding rectal or internal bleeding.

On May 8, 2003, Plaintiff reported to the medical department for a follow up regarding possible gastrointestinal bleeding. During this visit he returned three "guiac" stool sample cards which were positive for blood. Plaintiff requested a colonoscopy but again refused a rectal exam offered by a P.A. The P.A. summoned Dr. Giron, who spoke with Plaintiff about the causes of

---

[6] The P.A. noted that the bleeding could be gastrointestinal in origin because of Plaintiff's use of Motrin and also noted Plaintiff's history of a benign polyp in his descending colon in 2000. He advised Plaintiff to discontinue using Motrin and noted that Plaintiff was reluctant to do so.

5

blood in his stool. The P.A. and Giron informed him that his blood count and weight would be monitored. He was again advised to avoid taking Motrin.

Plaintiff returned to the medical department on May 9, May 19, June 20, and July 9, 2003, with various medical complaints, none of which involved rectal bleeding. On July 21, 2003, however, he complained of lower back pain and rectal bleeding with stools. He refused to be examined for back pain or to submit to a rectal examination. He was advised about the possible causes for bloody stools and informed that his blood work would be repeated, but that recent tests had come back normal.

On August 20, 2003, Plaintiff reported to sick-call with multiple complaints including dark urine. The P.A. offered to conduct a rectal examination to check Plaintiff's prostate and looks for hemorrhoids or other possible causes of the complained rectal bleeding. Plaintiff declined the examination.

Defendants state that for the remainder of his assignment to FCI-Cumberland Plaintiff did not return to the medical department with complaints regarding rectal bleeding. The unopposed record shows that while Plaintiff filed multiple medical complaints and was evaluated throughout the rest of his FCI-Cumberland confinement, his claims involved subjective complaints of chest pain. Plaintiff was scheduled for stress tests but refused to take them on at least six occasions. In addition, Dr. Moubarek requested and was granted approval for Plaintiff to undergo a liver biopsy so that Plaintiff's HCV could be monitored and treated. Although the biopsy was scheduled for July 2, 2004, Plaintiff refused to submit to same. Plaintiff was transferred from FCI-Cumberland on May 2, 2005.

Under the FTCA, the United States is liable as a private person for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." [7] 28 U.S.C. § 1346(b). As a waiver of sovereign immunity, the FTCA is to be narrowly construed. *See United States v. Nordic Village, Inc.*, 503 U. S. 30, 34 (1992). Moreover, a tort claim against the United States is barred unless an administrative claim is presented in writing to the appropriate federal agency within two years after such claim accrues[8] or unless the civil action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. *See* 28 U.S.C. §§ 2401(b) & 2675(a). Both the statute of limitations and administrative exhaustion provisions are jurisdictional requirements that cannot be waived and which are not subject to estoppel. *See Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000).

Plaintiff filed an Administrative Tort Claim while confined at FCI-Cumberland on June 5, 2003. (Administrative Tort Claim TRT-MXR-2003-03074). The tort claim complained that he was experiencing rectal bleeding for over four months due to being prescribed acetaminophen and ibuprofen and that FCI-Cumberland medical staff had refused to treat him for the bleeding.[9] The

---

[7]   Under the FTCA, the United States would be considered the only proper defendant. *See Feres v. United States*, 340 U.S. 135, 141 (1950), *Wood v. Standard Products Co., Inc.*, 671 F.2d 825, 829-30 (4th Cir. 1982).

[8]   Liability under the FTCA is determined in accordance with state law, but federal law determines when the action accrues. *See Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). A cause of action accrues under the FTCA when plaintiff knows, or in the exercise of reasonable diligence, should have known both the existence and cause of his injury. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993); *Gould v. United States Dep't of Health & Human Services*, 905 F.2d 738, 742 (4th Cir. 1990).

[9]   It is not controverted that while confined at FCI-Cumberland Plaintiff did not file any sick-call requests regarding rectal bleeding after August 20, 2003.

Bureau of Prisons ("BOP") Mid-Atlantic Regional Office investigated and denied the tort claim on December 1, 2003. This cause of action, filed on February 20, 2007, was submitted more than six months after the BOP denied the tort claim. Plaintiff does not refute Defendants' renewed arguments that his tort claim is untimely.

As to Plaintiff's constitutional *Bivens* claim, he must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Assuming Plaintiff has satisfied this first element, he must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison medical personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

The unopposed record reveals that in 2003, Plaintiff was seen for his sick-call requests regarding rectal bleeding during the months of March through August of 2003. He does not refute Defendants' exhibits to show that he made complaints of rectal bleeding to FCI-Cumberland before or after that time period. During that five-month period he refused to submit to a rectal examination on several occasions. He was given occult stool cards which were positive for occult blood.

8

Further, CBC blood tests were taken to monitor his condition and to attempt to diagnose the cause of his bleeding. The test results were normal.

V.     *Conclusion*

The Court finds that Plaintiff's FTCA claim is barred as untimely. It further concludes that he has failed to demonstrate deliberate indifference with regard to his Eighth Amendment medical claim. A separate Order follows, granting Defendants' Motion for Summary Judgment.

/s/

Date:  9/21/09                                  _____
William M. Nickerson
Senior United States District Judge